| | |
|---|---|
| 1 | Jason M. Ingber (SBN 318323) |
| 2 | Serach B. Shafa (SBN 358332) |
| | **Ingber Law Group** |
| 3 | 3580 Wilshire Blvd., Suite 1260 |
| | Los Angeles, California 90010 |
| 4 | Telephone: (213) 805-8373 |
| | E-mail: ji@jasoningber.com |
| 5 | E-mail: ss@jasoningber.com |
| 6 | |
| 7 | Attorneys for Defendant |
| | MOOSA HARASIS AND STACY ROSS |
| 8 | |

### UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOOSA HARASIS, STACY ROSS, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FIRST ELEMENT FUEL, INC., a California Stock Corporation, dba TRUE ZERO; SHELL USA, INC., dba SHELL OIL COMPANY, a Texas corporation; AIR PRODUCTS AND CHEMICALS, INC.; CHEVRON U.S.A. INC.; IWATANI CORPORATION OF AMERICA; and DOES 1 through 10, inclusive,<br><br>Defendants. | **Case No.: 2:25-cv-07355-WLH-PVC**<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT FOR:**<br>**(1) Unjust Enrichment (Against FirstElement and Iwatani)**<br>**(2) R.I.C.O. 18 U.S.C. § 1962(c) (Against All Defendants)**<br>**(3) Breach of Contract (Against FirstElement and Iwatani)**<br>**(4) Violation of Unfair Competition Law (Against All Defendants)**<br>**(5) Violation of False Advertising Law (Against All Defendants)**<br><br>**JURY TRIAL DEMANDED** |

- 1 -
**FIRST AMENDED COMPLAINT**
2:25-cv-07355-WLH-PVC

Plaintiffs MOOSA HARASIS and STACY ROSS ("Plaintiffs") plead as follows:

## INTRODUCTION

1. This class action arises from two distinct but related schemes perpetrated by Defendants against California hydrogen vehicle owners: (a) systematic overcharging by retail station operators FirstElement and Iwatani, who charge consumers for hydrogen fuel quantities that physically cannot fit in vehicle tanks; and (b) coordinated price manipulation by all Defendants through their participation in the California Fuel Cell Partnership, which resulted in an artificial tripling of hydrogen fuel prices after peak vehicle sales in 2022.

2. As demonstrated by photographic evidence and consumer experiences, hydrogen pumps operated by Defendants FirstElement and Iwatani display dispensed quantities that exceed vehicle tank capacities by significant margins—in some cases showing 6.9 kg dispensed into vehicles with 5.6 kg tank capacities, representing typical overcharges of approximately 100% when the fact that there was already fuel in the tank when Plaintiff went to fuel is accounted for.

3. Separately, all Defendants—FirstElement, Shell, Air Products, Chevron, and Iwatani—participate in the California Fuel Cell Partnership, through which they coordinate pricing, share market data, and have collectively tripled hydrogen prices from approximately $13 per kilogram to $36 per kilogram since 2023.

## A. PARTIES

### Plaintiffs

4. Plaintiff Moosa Harasis is a resident of California and owner of a Toyota Mirai hydrogen fuel cell vehicle with a maximum tank capacity of 5.6 kilograms. Mr. Harasis has purchased hydrogen fuel from Defendant FirstElement's True Zero stations on multiple occasions, including January 17, 2025, when he was charged for 6.044 kg of hydrogen—an amount exceeding his vehicle's maximum tank capacity.

5. Plaintiff Stacy Ross is a resident of California and owner of a Hyundai Nexo hydrogen fuel cell vehicle with a maximum tank capacity of 6.33 kilograms. Ms. Ross has purchased hydrogen fuel from Defendant FirstElement's True Zero stations on multiple occasions, including:

(a) on or about October 2024, at a station in Torrance, California, where she was charged for fuel quantities substantially exceeding her tank's capacity; and (b) on a separate occasion at a True Zero station where she was charged for fuel exceeding her Nexo's 6.33 kg tank capacity.

## Retail Station Operator Defendants

6. Defendant FIRST ELEMENT FUEL, INC. d/b/a TRUE ZERO ("FirstElement") is a California corporation that owns and operates hydrogen refueling stations throughout California. FirstElement operates the largest network of retail hydrogen stations in California, including stations in Santa Barbara, Torrance, Woodland Hills, and numerous other locations. FirstElement has contractual relationships with Toyota to provide hydrogen fuel to Toyota vehicle owners. FirstElement directly charged Plaintiffs Harasis and Ross for hydrogen fuel at its True Zero stations. FirstElement is a member of the California Fuel Cell Partnership.

7. Defendant IWATANI CORPORATION OF AMERICA ("Iwatani") is a California corporation that operates hydrogen refueling stations throughout California. Iwatani operates retail hydrogen stations where class members have purchased fuel and been charged for quantities exceeding their vehicles' tank capacities. Iwatani is a member of the California Fuel Cell Partnership.

## Upstream Supply and Infrastructure Defendants

8. Defendant SHELL USA, INC. ("Shell") is a Texas corporation that operated hydrogen refueling stations in California until February 2024, when it permanently closed all of its light-duty hydrogen fueling stations in California. Prior to closure, Shell participated in setting hydrogen fuel prices and infrastructure development through its membership in the California Fuel Cell Partnership. Shell participated in the coordinated price increases that occurred in 2023 while its stations were operational and continues to participate in the California Fuel Cell Partnership. Plaintiffs do not allege that they purchased hydrogen directly from Shell stations.

9. Defendant AIR PRODUCTS AND CHEMICALS, INC. ("Air Products") is a Delaware corporation that produces and supplies hydrogen fuel to refueling stations throughout California. Air Products does not operate retail stations where consumers purchase fuel directly; rather, it supplies hydrogen to retail station operators including FirstElement and Iwatani. Air Products

1  participates in hydrogen pricing coordination through its membership in the California Fuel Cell
2  Partnership.
3      10.    Defendant CHEVRON U.S.A. INC. ("Chevron") is a Pennsylvania corporation that
4  operates hydrogen refueling stations in California. Chevron operates only two hydrogen
5  automobile refueling stations in California, both of which opened in 2025. Chevron participates in
6  hydrogen pricing coordination through its membership in the California Fuel Cell Partnership,
7  leveraging its gasoline pricing knowledge to coordinate hydrogen pricing strategies. Plaintiffs do
8  not allege that they purchased hydrogen directly from Chevron stations.

## B. JURISDICTION AND VENUE

10     11.    This Court has jurisdiction over this action pursuant to: (a) 18 U.S.C. § 1964(c),
11  which provides federal district courts with jurisdiction over civil RICO claims; and (b) the Class
12  Action Fairness Act, 28 U.S.C. § 1332(d), because the amount in controversy exceeds $5,000,000,
13  exclusive of interest and costs, and this is a class action in which members of the proposed class
14  are citizens of states different from Defendants.
15     12.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendants
16  conduct substantial business in this District, a substantial part of the events giving rise to Plaintiffs'
17  claims occurred in this District, and Plaintiffs purchased hydrogen fuel at stations in this District,
18  including at 150 S. La Cumbre Rd., Santa Barbara, CA 93105.

## C. GENERAL ALLEGATIONS
### A. The California Fuel Cell Partnership Enterprise

21     13.    Defendants FirstElement, Shell, Air Products, Chevron, and Iwatani are all members
22  of the California Fuel Cell Partnership (formerly the California Hydrogen Fuel Cell Partnership),
23  an organization through which hydrogen industry participants coordinate activities, share market
24  data, and make collective decisions about hydrogen infrastructure and pricing.
25     14.    Through the California Fuel Cell Partnership, Defendants have access to real-time
26  hydrogen vehicle sales data and production forecasts. Armed with this insider information,
27  Defendants knew that 2022 represented peak hydrogen vehicle sales in California, with over
28  12,000 vehicles on the road and more hydrogen vehicles sold than in any previous year.

15. Through Partnership meetings, Defendants also knew that auto manufacturers were quietly winding down hydrogen vehicle production—Toyota drastically reduced Mirai production after 2022, Honda discontinued the Clarity Fuel Cell, and Hyundai limited Nexo availability.

16. In 2023, after the highest number of consumers had purchased vehicles and committed to hydrogen fuel, Defendants collectively tripled prices from approximately $13 per kilogram to $36 per kilogram—an increase that would cost each consumer an additional $115.50 per fill-up. The timing was calculated to maximize extraction from the largest possible pool of captive consumers.

17. By hiking prices after peak sales and before production ceased, Defendants ensured they could extract maximum revenue from captive consumers who had no alternative fuel options. This coordinated price manipulation transforms what automakers marketed as "$15,000 in free fuel" into a rapidly depleting asset—at the original price, fuel cards would provide approximately 1,154 kilograms of hydrogen (nearly 4 years of typical driving); at the manipulated price, these same cards provide only 417 kilograms (barely 18 months of fuel).

### B. Systematic Overcharging by FirstElement

18. Defendant FirstElement, through its True Zero branded stations, operates the largest hydrogen refueling network in California. FirstElement's hydrogen dispensing pumps routinely charge consumers for more hydrogen than their vehicles' tanks can physically hold.

19. Hydrogen fuel cell vehicles have specific, manufacturer-specified tank capacities that cannot be exceeded—5.6 kg for Toyota Mirai vehicles and 6.33 kg for Hyundai Nexo vehicles. These are physical limitations that cannot be overcome regardless of pump operation.

20. Photographic and documentary evidence demonstrates multiple instances where FirstElement's pumps displayed and charged for impossible dispensing quantities:

    a. On April 6, 2024, a FirstElement pump displayed 5.95 kg dispensed into a 5.6 kg capacity Mirai tank;

    b. On January 17, 2025, FirstElement charged Plaintiff Harasis $217.58 for 6.044 kg of hydrogen dispensed into his 5.6 kg capacity Mirai tank;

        c. On multiple occasions, FirstElement pumps displayed 6.9 kg dispensed into 5.6 kg capacity tanks.

21. When confronted with evidence of overcharging, FirstElement engages in a pattern of delay, deflection, and denial. When Plaintiff Harasis contacted FirstElement about his January 17, 2025 overcharge, FirstElement representative James Troup falsely claimed that "Nexo holds 6.33 kg from zero"—despite the fact that Plaintiff Harasis owns a Mirai (not a Nexo) and the fill was from 1/3 tank (not from zero). This response demonstrates either willful ignorance of FirstElement's own systems or deliberate deception.

22. Despite Plaintiff Harasis initiating contact with FirstElement on January 17, 2025, and following up on January 30, February 4, February 27, February 28, and April 22, 2025, FirstElement has failed to provide the promised refund.

### C. Plaintiff Harasis's Specific Experiences with FirstElement

23. On January 17, 2025, at a FirstElement True Zero station, Plaintiff Harasis was charged $217.58 for 6.044 kg of hydrogen. Because his Toyota Mirai has a maximum tank capacity of 5.6 kg, he was charged for at least 0.444 kg of hydrogen that could not physically have been delivered to his vehicle—a minimum overcharge of $15.98 at the $36.00/kg price.

24. This overcharge is mathematically certain: Maximum tank capacity (5.6 kg) minus amount charged (6.044 kg) equals 0.444 kg overcharge. At $36.00/kg, this equals $15.98 minimum overcharge—and likely more, given that Plaintiff's tank was not empty when he began fueling.

### D. Plaintiff Ross's Specific Experiences with FirstElement

25. On or about October 8, 2024, at a FirstElement hydrogen fueling station in Torrance, California, Plaintiff Ross experienced a dangerous malfunction where the fueling nozzle became stuck in her vehicle's receptacle. The station's display indicated the tank was overfilling and emitted alarming noises. Plaintiff Ross was charged for fuel quantities that the station indicated filled her tank numerous kilograms over and above her vehicle's 6.33 kg capacity—approximately double the amount possible to fuel.

26. On a separate occasion at a FirstElement True Zero station, Plaintiff Ross experienced another dangerous hydrogen overfill incident (captured on video). While refueling, the fueling

hose locked onto her vehicle and the pump continued to dispense hydrogen well past the point when her tank reached full capacity. Despite the tank being full, the pump would not stop dispensing fuel and the hose would not release from the vehicle. Only after Plaintiff contacted a FirstElement representative by phone was the representative able to remotely reset the pump to stop the flow of hydrogen and release the locking mechanism. The receipt from this incident showed the total amount of fuel dispensed exceeded her Hyundai Nexo's 6.33 kg tank capacity as stated in the owner's manual, resulting in Plaintiff Ross being charged for fuel that could not physically have been delivered to her vehicle.

27. On or about August 3, 2025, at a FirstElement True Zero station, Plaintiff Ross encountered yet another dangerous fueling malfunction when the fuel hose became frozen solid during the refueling process. For six minutes, she struggled with the frozen equipment, experiencing what felt like freezer burn on her hands from the extreme cold. Another hydrogen vehicle driver who witnessed the struggle explained that she had experienced this same "frozen pump" issue multiple times. This systematic equipment failure creates safety hazards and demonstrates FirstElement's failure to maintain its fueling infrastructure in safe working condition.

### E. Plaintiff Harasis's Experience with Air Products Station

28. On or about July 2025, Plaintiff Harasis was stranded at the Air Products-supplied hydrogen fueling station in Woodland Hills, California, for nearly two hours after the station automatically went offline due to high ambient temperatures. When contacting an Air Products representative, Plaintiff was informed that the station is programmed to shut down whenever temperatures exceed 86°F—a common occurrence in the San Fernando Valley for at least 60 to 90 days annually. The representative suggested that Plaintiff return at dusk, limiting usable refueling hours to a narrow window between approximately 7:00 p.m. and 10:00 p.m. Air Products' failure to account for known regional climate conditions in station design makes the publicly advertised station availability misleading and renders the station practically unusable during peak demand hours.

### F. Systematic Industry-Wide Failures

29. All California hydrogen stations are non-operational more often than they are operational by a significant margin. During the first six months of 2021 (the peak period for hydrogen fuel pumps in California), hydrogen fuel stations spent over 11,700 hours undergoing maintenance compared to fewer than 7,200 hours pumping hydrogen. Furthermore, operational stations only ran at 60% of full capacity due to equipment failure and hydrogen supply disruptions.

30. Defendants operate hydrogen fueling stations with arbitrarily limited and unpredictable operational hours that strand consumers without notice. Despite marketing 24/7 accessibility on their websites, Defendants unilaterally restrict station hours without prior notification.

31. Defendants impose arbitrary restrictions on prepaid fuel cards that transform equipment malfunctions into consumer penalties. Each fuel card is limited to three transactions per day. When Defendants' defective pumps malfunction—which occurs regularly—the pump often initiates the fueling process, charges the card, but shuts down after dispensing minimal or no fuel. Despite the failed transaction being caused entirely by Defendants' equipment failure, the system counts this as one of the consumer's three daily uses, leaving drivers stranded through no fault of their own.

### D. CLASS ACTION ALLEGATIONS

32. Plaintiffs bring this action individually and as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of the following classes:

**Overcharge Class (Against FirstElement and Iwatani):** All persons in California who purchased hydrogen fuel from FirstElement or Iwatani stations and were charged for quantities exceeding their vehicles' tank capacities within the applicable statute of limitations period.

**Price Manipulation Class (Against All Defendants):** All persons in California who purchased hydrogen fuel from any Defendant after January 1, 2023, and paid prices inflated by Defendants' coordinated price manipulation.

33. Excluded from the Classes are Defendants, their employees, officers, and directors, and the Court and its personnel.

34. Numerosity: The Classes consist of thousands of hydrogen vehicle owners who have been overcharged and/or subjected to manipulated prices. Class members are so numerous that joinder is impracticable.

35. Commonality: Common questions of law and fact exist as to each class, including:

   a. Whether FirstElement's and Iwatani's hydrogen pumps systematically overstate dispensed quantities;

   b. Whether FirstElement and Iwatani knew or should have known about calibration issues;

   c. Whether Defendants coordinated to artificially inflate hydrogen fuel prices;

   d. Whether Defendants' conduct violates RICO;

   e. Whether Defendants' conduct violates California's Unfair Competition Law and False Advertising Law;

   f. The appropriate measure of damages.

36. Typicality: Plaintiffs' claims are typical of the class as all class members were overcharged through the same systematic practices and/or subjected to the same artificially inflated prices.

37. Adequacy: Plaintiffs will fairly and adequately protect class interests and have retained competent counsel experienced in class action litigation.

38. Predominance and Superiority: Common questions predominate over individual issues, and a class action is superior to individual litigation given the small individual damages relative to litigation costs.

## FIRST CAUSE OF ACTION
### Unjust Enrichment/Quasi-Contract
### (Against FirstElement and Iwatani Only)

39. Plaintiffs reallege and incorporate by reference all preceding paragraphs.

40. Plaintiffs bring this claim in the alternative to their breach of contract claim. To the extent no enforceable contract exists between Plaintiffs and Defendants FirstElement and Iwatani governing the hydrogen fuel transactions at issue, Plaintiffs seek restitution under a theory of quasi-contract.

41. Defendants FirstElement and Iwatani have received money from Plaintiffs and class members by charging for hydrogen fuel that was never delivered because it could not physically fit in vehicle tanks.

42. Specifically, FirstElement has been enriched by:

    a. Collecting $217.58 from Plaintiff Harasis on January 17, 2025, while delivering at most $201.60 worth of hydrogen (5.6 kg × $36.00/kg);

    b. Retaining the $15.98 difference for 0.444 kg of hydrogen that does not exist in Plaintiff's vehicle;

    c. Similarly overcharging Plaintiff Ross on multiple occasions at amounts exceeding her vehicle's 6.33 kg tank capacity;

    d. Multiplying these overcharges across thousands of transactions with class members.

43. FirstElement's and Iwatani's enrichment is unjust because:

    a. They charged for a product they did not and could not deliver;

    b. They know vehicle tank capacities cannot exceed manufacturer specifications;

    c. FirstElement refused to refund obvious overcharges despite months of requests from Plaintiff Harasis.

44. It would be inequitable and unconscionable for FirstElement and Iwatani to retain money paid for hydrogen that was never delivered.

45. Plaintiffs and class members are entitled to restitution of all amounts paid for hydrogen quantities exceeding their vehicles' tank capacities.

## SECOND CAUSE OF ACTION
### Violation of 18 U.S.C. § 1962(c) (RICO)
### (Against All Defendants)

46. Plaintiffs reallege and incorporate by reference all preceding paragraphs.

### The Enterprise

47. Defendants FirstElement, Shell, Air Products, Chevron, and Iwatani constitute an association-in-fact enterprise (the "Enterprise") within the meaning of 18 U.S.C. § 1961(4), operating through the California Fuel Cell Partnership (the "Partnership").

48. The Enterprise has an ascertainable structure separate and apart from the pattern of racketeering activity. The Partnership holds regular meetings, maintains formal membership, coordinates infrastructure development, shares market data including vehicle sales figures and production forecasts, and makes collective pricing decisions. Each Defendant plays a distinct role within this structure.

49. The Enterprise operates with a common purpose of extracting maximum revenue from captive hydrogen vehicle owners through: (a) coordinated price manipulation; and (b) for retail station operators FirstElement and Iwatani, systematic overcharging at the pump.

50. The Enterprise has operated continuously since at least 2020 and continues to operate, affecting interstate commerce through hydrogen production, distribution, and sales across state lines.

### Each Defendant's Role in the Enterprise

51. Defendant FirstElement's Role: FirstElement controls the majority of California hydrogen retail stations through its True Zero brand. Within the Enterprise, FirstElement: (a) sets pricing benchmarks that other members follow; (b) implements coordinated price increases at its stations; (c) systematically overcharges consumers through miscalibrated pumps; (d) uses electronic systems to process fraudulent charges; and (e) transmits false receipts showing inflated quantities. FirstElement committed predicate acts of wire fraud by electronically processing fuel card transactions for hydrogen quantities it knew exceeded vehicle tank capacities, including at minimum the January 17, 2025 transaction with Plaintiff Harasis ($217.58 for 6.044 kg) and multiple transactions with Plaintiff Ross showing charges exceeding her 6.33 kg tank capacity.

52. Defendant Shell's Role: Prior to closing its California hydrogen stations in February 2024, Shell participated in the Enterprise by: (a) coordinating pricing strategies through Partnership meetings; (b) implementing the 2023 coordinated price increases at its stations while operational; (c) sharing pricing and market data with other Enterprise members; and (d) using interstate distribution networks to facilitate the Enterprise's activities. Shell committed predicate acts by participating in wire communications coordinating the 2023 price increases and electronically implementing those price increases at its stations before closure.

53.     Defendant Air Products' Role: Air Products controls hydrogen production and supply to retail stations. Within the Enterprise, Air Products: (a) artificially constrains hydrogen supply to support inflated prices; (b) participates in Partnership pricing discussions; (c) coordinates with retail station operators to maintain price levels; and (d) designs and supplies station equipment that it knows will fail under foreseeable conditions (such as the Woodland Hills station's 86°F shutdown threshold). Air Products committed predicate acts through wire communications coordinating supply constraints and pricing with other Enterprise members.

54.     Defendant Chevron's Role: Chevron leverages its extensive gasoline pricing expertise within the Enterprise by: (a) providing sophisticated pricing strategy guidance to other members; (b) coordinating hydrogen pricing to align with gasoline pricing strategies; (c) participating in Partnership data sharing; and (d) implementing coordinated prices at its stations (opened 2025). Chevron committed predicate acts through wire communications sharing pricing strategies and coordinating price increases with other Enterprise members.

55.     Defendant Iwatani's Role: Iwatani operates retail hydrogen stations throughout California. Within the Enterprise, Iwatani: (a) participates in price-setting meetings through the Partnership; (b) implements coordinated price increases; (c) systematically overcharges consumers through its pumps; and (d) electronically processes fraudulent fuel card transactions. Iwatani committed predicate acts of wire fraud by electronically processing transactions for hydrogen quantities exceeding vehicle tank capacities.

Pattern of Racketeering Activity

56.     Each Defendant has engaged in a pattern of racketeering activity consisting of multiple predicate acts of wire fraud in violation of 18 U.S.C. § 1343.

57.     The wire fraud predicate acts include:

    a. Electronic processing of fuel card transactions for hydrogen quantities that Defendants knew exceeded vehicle tank capacities—thousands of such transactions occurred at FirstElement and Iwatani stations since at least 2021;

    b. Wire transmissions coordinating the 2023 price increases among Enterprise members through Partnership communications;

      c. Electronic transmission of false dispensing data from pumps to payment processing systems;

      d. Wire communications sharing market data and coordinating pricing strategies among Enterprise members.

58. These predicate acts form a pattern of racketeering activity because they are related (all further the common scheme to extract maximum revenue from hydrogen consumers) and continuous (occurring daily since at least 2021 with thousands of fraudulent transactions, continuing to the present and threatening to continue indefinitely).

59. The pattern demonstrates closed-ended continuity: the coordinated price manipulation began in 2023 and has continued for over two years, with Enterprise members maintaining artificially inflated prices throughout this period. The systematic overcharging at FirstElement and Iwatani stations has occurred continuously since at least 2021—a period of over four years.

60. The pattern also demonstrates open-ended continuity: the Enterprise continues to operate, prices remain artificially elevated, and FirstElement and Iwatani continue to charge for impossible hydrogen quantities. The conduct is the Enterprise members' regular way of doing business and poses a specific threat of indefinite continuation.

<u>Causation and Damages</u>

61. Defendants' racketeering activity directly caused Plaintiffs' and class members' injuries:

      a. But for the coordinated price-fixing, hydrogen would cost approximately \$13/kg, not \$36/kg—Plaintiffs and class members have been damaged by the \$23/kg price inflation on every fill;

      b. But for FirstElement's and Iwatani's calibration fraud, Plaintiffs and class members would pay only for fuel actually received.

62. Plaintiffs and class members suffered concrete economic injuries from this racketeering activity, including:

    a. Overcharge injuries: $15.98 per fill from calibration fraud (for Plaintiff Harasis's documented January 17, 2025 transaction, and similar amounts for other transactions);

    b. Price-fixing injuries: approximately $128.80 per fill from artificial price inflation (5.6 kg × $23.00 price difference);

    c. Accelerated depletion of $15,000 prepaid fuel cards provided with vehicle purchases.

63. Plaintiffs seek treble damages under 18 U.S.C. § 1964(c), plus costs and reasonable attorneys' fees.

### THIRD CAUSE OF ACTION
### Breach of Contract
### (Against FirstElement and Iwatani Only)

64. Plaintiffs reallege and incorporate by reference all preceding paragraphs.

65. Each time Plaintiffs and class members purchased hydrogen fuel at FirstElement or Iwatani stations, a contract was formed whereby: (a) the consumer agreed to pay for a specific quantity of hydrogen fuel at the displayed price per kilogram; and (b) FirstElement or Iwatani agreed to deliver that exact quantity of fuel into the consumer's vehicle.

66. The fundamental terms of each transaction are displayed on the pump and memorialized in the receipt: the price per kilogram, the quantity allegedly dispensed, and the total charge.

67. FirstElement and Iwatani breached these contracts by charging for hydrogen quantities that were not and could not have been delivered because they exceeded the physical capacity of the vehicles' tanks.

68. As a direct and proximate result of these breaches, Plaintiffs and class members have been damaged in amounts to be proven at trial, including the difference between amounts charged and the value of hydrogen actually received.

### FOURTH CAUSE OF ACTION
### Violation of California's Unfair Competition Law
### Cal. Bus. & Prof. Code § 17200 et seq.
### (Against All Defendants)

69. Plaintiffs reallege and incorporate by reference all preceding paragraphs.

70. California's Unfair Competition Law ("UCL") prohibits any unlawful, unfair, or fraudulent business act or practice.

71. Defendants have engaged in unlawful business practices by:

    a. FirstElement and Iwatani: Charging consumers for hydrogen fuel quantities exceeding vehicle tank capacities, in violation of common law principles prohibiting fraud and unjust enrichment;

    b. All Defendants: Coordinating to artificially inflate hydrogen fuel prices through the California Fuel Cell Partnership, in violation of 18 U.S.C. § 1962(c).

72. Defendants have engaged in unfair business practices by:

    a. FirstElement and Iwatani: Operating pumps that systematically overcharge consumers for impossible fuel quantities;

    b. All Defendants: Using insider market data from the Partnership to time price increases for maximum consumer harm;

    c. All Defendants: Maintaining artificially inflated prices while knowing hydrogen vehicle production was winding down, trapping existing owners with no alternatives.

73. Defendants have engaged in fraudulent business practices by:

    a. FirstElement and Iwatani: Displaying and charging for fuel quantities that they knew exceeded vehicle tank capacities;

    b. All Defendants: Marketing hydrogen infrastructure as reliable and accessible when stations are non-operational more often than operational;

    c. FirstElement: Making false statements about refund availability when confronted with overcharge evidence.

74. As a direct and proximate result of Defendants' UCL violations, Plaintiffs and class members have suffered injury in fact and lost money. Plaintiffs seek restitution and injunctive relief under the UCL.

**FIFTH CAUSE OF ACTION**

**Violation of California's False Advertising Law**
**Cal. Bus. & Prof. Code § 17500 et seq.**
**(Against All Defendants)**

75. Plaintiffs reallege and incorporate by reference all preceding paragraphs.

76. California's False Advertising Law ("FAL") prohibits untrue or misleading advertising.

77. Defendants engaged in false and misleading advertising by:

   a. FirstElement and Iwatani: Displaying fuel quantities on pumps and receipts that they knew were false because they exceeded vehicle tank capacities;

   b. All Defendants: Advertising hydrogen stations as operational and accessible when they are non-operational more often than operational;

   c. All Defendants: Marketing hydrogen fuel infrastructure through the Partnership as a viable alternative to gasoline while knowing the infrastructure was unreliable and prices would be artificially inflated.

78. Plaintiffs and class members reasonably relied on Defendants' representations and were deceived into believing they were receiving the fuel quantities displayed and that hydrogen infrastructure would be reliable and competitively priced.

79. As a direct and proximate result of Defendants' FAL violations, Plaintiffs and class members have suffered injury in fact and lost money. Plaintiffs seek restitution and injunctive relief under the FAL.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

   A. Certification of the proposed Classes;

   B. Designation of Plaintiffs as Class Representatives and their counsel as Class Counsel;

   C. Compensatory damages in an amount to be proven at trial;

   D. Treble damages under 18 U.S.C. § 1964(c);

   E. Restitution and disgorgement of all amounts wrongfully obtained;

   F. Injunctive relief requiring Defendants to:

      i. Properly calibrate all hydrogen dispensing equipment;

      ii. Cease coordinated pricing practices;

iii. Reduce hydrogen prices to competitive market levels;

G. Pre-judgment and post-judgment interest;

H. Reasonable attorneys' fees and costs of suit;

I. Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial by jury on all issues so triable.

Dated: December 30, 2025

**INGBER LAW GROUP**

_/s/ Jason M. Ingber_
Jason M. Ingber, Esq.
Attorney for Plaintiffs
MOOSA HARASIS AND STACY ROSS

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of 18 years and not a party to the within action; my business address is 3580 Wilshire Blvd., Suite 1260, Los Angeles, CA 90010.

On December 31, 2025, I served the foregoing document described as: **CLAIMANT'S INITIAL EXCHANGE OF INFORMATION** on the interested parties in this action as follows:

☐ **BY MAIL**. I caused such envelope or package with postage thereon fully prepaid to be placed in the United States mail at Los Angeles, California.

☐ **BY FAX**. I caused such documents to be faxed at Los Angeles, California from fax number

☐ **BY PERSONAL SERVICE**. I caused such envelope or package to be delivered by hand to the addressee(s).

☐ **BY OVERNIGHT MAIL**. I caused such documents to be placed in a sealed envelope and delivered to an overnight courier company for overnight service to the office(s) of the addressee(s).

☒ **BY ELECTRONIC MAIL**. By e-mailing the above referenced document(s) to the person(s) at the e-mail address(es) of the addressee(s).

**ADDRESSEE(S):**

| | |
|---|---|
| Cheryl S. Chang<br>Victor J Sandoval<br>Blank Rome LLP<br>2029 Century Park East 6th Floor<br>Los Angeles, CA 90067<br>424-239-3400<br>Fax: 424-239-4343 | Attorneys for Defendants<br>FIRST ELEMENT FUEL, INC<br>AIR PRODUCTS AND CHEMICALS, INC.<br><br>Email: cheryl.chang@blankrome.com<br>Email: victor.sandoval@blankrome.com |
| Robert Kenneth Dixon<br>Sanders Roberts LLP<br>101 West Broadway, Suite 1105<br>San Diego, CA 92101<br>619-398-4800<br>Fax: 213-234-4581 | Attorney for Defendant<br>SHELL USA, INC<br><br>Email: rdixon@sandersroberts.com |
| Kuruvilla Joseph Olasa<br>Munger Tolles & Olson LLP<br>350 South Grand Avenue 50th Floor<br>Los Angels, CA 90071<br>213-683-9100<br>Fax: 213-687-3702 | Attorney for Defendant<br>CHEVRON USA, INC<br><br>Email: Kuruvilla.Olasa@mto.com |

**FIRST AMENDED COMPLAINT**
2:25-cv-07355-WLH-PVC

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on December 31, 2025 at Los Angeles, California.

By: <u>*/s/ Danielle Ursua*</u>
     DANIELLE URSUA